**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-----------------------------------------------------------------x

In re                                                     Chapter 11

SEARS HOLDING CORPORATION, *et al.*                       Case No. 18-23538 (SHL)

                                   Debtors.               (Jointly Administered)
-----------------------------------------------------------------x
AIG EUROPE, S.A. and AMERICAN
INTERNATIONAL GROUP UK LIMITED

                                   Plaintiffs,

                  vs.
                                                          Adv. Pro. No. 23-07004 (SHL)
SEARS HOLDING CORPORATION,
TRANSFORM HOLDCO LLC, and
SANTA ROSA MALL, LLC,

                                   Defendants.
-----------------------------------------------------------------x


<u>**MEMORANDUM OF DECISION**</u>

**A P P E A R A N C E S :**

ZEICHNER ELLMAN & KRAUSE LLP
*Attorneys for AIG Europe, S.A. and*
*American International Group UK Limited*
1211 Avenue of the Americas
New York, New York 10036
By:    Michael S. Davis, Esq.
       Bryan D. Leinbach, Esq.

HINSHAW & CULBERTSON LLP
*Attorneys for AIG Europe, S.A. and*
*American International Group UK Limited*
800 Third Avenue,13th Floor
New York, New York 10022
By:    Courtney Murphy, Esq.

WEIL, GOTSHAL & MANGES LLP
*Attorneys for Sears Holding Corporation*
767 Fifth Avenue
New York, New York 10153

By:    Garret A. Fail, Esq.
       Gregory Silbert, Esq.
       Jennifer Brooks Crozier, Esq.
       Fredrick T. Rhine, Esq.
       Patrick Lyons, Esq.

FERRAIUOLI, LLC
*Attorneys for Santa Rosa Mall, LLC*
221 Ponce de León Avenue, 5th Floor
San Juan, Puerto Rico 00917
By:    Sonia E. Colón, Esq.
       Gustavo A. Chico-Barrios, Esq.

RIOS GAUTIER & CESTERO, C.S.P
*Attorneys for Santa Rosa Mall, LLC*
27 Calle González Giusti Suite 300
Guaynabo, Puerto Rico 00968-3076
By:    Carlos R. Rios Gautier, Esq.

ORLANDO FERNÁNDEZ LAW OFFICES,  P.S.C.
*Attorneys for Santa Rosa Mall, LLC*
27 Calle González Giusti, Suite 300
Guaynabo, Puerto Rico 00968-3076
By:    Orlando Fernández, Esq.

**SEAN H. LANE**
**UNITED STATES BANKRUPTCY JUDGE**

Before the Court is the motion of AIG Europe, S.A. ("AESA") and AIG UK Limited

("AIG UK" and, together with AESA, the "Plaintiffs") seeking a preliminary injunction against

Defendant Santa Rosa Mall, LLC ("SRM") to enjoin SRM from commencing or prosecuting

litigation against Plaintiffs in any court other than this one.  *See* Motion for Preliminary

Injunction and Preliminary Restraining Order [ECF No. 2] (the "PI Motion").[1]  SRM has

opposed the PI Motion and requested dismissal of Plaintiffs' complaint or, in the alternative, to

---

[1]      References to the Case Management/Electronic Case Filing ("ECF") docket are to Adv. Pro. No. 23-07004
(SHL) unless otherwise specified.

transfer venue for this dispute to Puerto Rico.[2]  *See* SRM Venue Motion.  Defendant Sears

Holding Corporation ("Sears") supports Plaintiffs' request for injunctive relief.[3]  *See* Sears Mem.

in Support.  Both Plaintiffs and Sears filed replies in further support of the PI Motion and in

opposition to the Venue Motion.[4]  *See* Plaintiffs' Reply; *see also* Sears Reply.  SRM then filed

its own reply.[5]  *See* SRM Reply.

      For the reasons set forth below, the Court grants the PI Motion and denies the SRM

Venue Motion.

## <u>Background</u>

      The history of the dispute between these parties is lengthy, and the Court will recite only

so much of the background of the dispute that is relevant to the current motions.  Sears, Roebuck

de Puerto Rico Inc. (now known as SR – Rover de Puerto Rico) is a joint Debtor in the main

bankruptcy proceeding.  Many decades before these bankruptcies, Santa Rosa Shopping Center

Inc. ("Landlord")[6] and Sears, Roebuck de Puerto Rico, Inc. ("Tenant") entered into a lease under

which the Tenant agreed to lease premises from the Landlord to build and operate a department

store, identified as Store No. 1915, in Bayamón, Puerto Rico.  SRM Venue Motion, Ex. 5; First

---

[2]     *See* Opp. to Motion for Preliminary Injunction and Request for Dismissal, or, in the Alternative, to Transfer Venue [ECF No. 17] (the "SRM Venue Motion").

[3]     *See* Debtors' Mem. of Law in Support of AIG Europe, S.A.'s Motion For a Preliminary Injunction and Temporary Restraining Order [ECF No. 19] ("Sears Mem. in Support").

[4]     *See* AIG Europe, S.A. and American International Group UK Limited's Memorandum of Law in Further Support of their Motion for a Preliminary Injunction and in Opp. to Santa Rosa Mall, LLC's Cross-Motion To Dismiss [ECF No. 25] ("Plaintiffs' Reply"); *see also* Sears's Response Brief in Further Support of AIG Europe, S.A.'s Motion for a Preliminary Injunction and Temporary Restraining Order [ECF No. 24] ("Sears Reply").

[5]     *See* Santa Rosa Mall LLC's Response to the Debtors' Memorandum of Law in Support of Plaintiffs' Motion for a Preliminary Injunction [ECF No. 30] ("SRM Reply").

[6]     SRM does not address the relationship, if any, between SRM and Santa Rosa Shopping Center Inc. However, all parties appear to treat SRM and Santa Rosa Shopping Center Inc. as the same entities.

Amended Adversary Complaint [ECF No. 6] (the "Complaint") ¶ 20.[7]  The terms of the lease

provided, among other things, that the Tenant was required to maintain insurance for the

premises (which included insurance to cover losses due to windstorm) "for the benefit of [SRM]

and Tenant."  SRM Venue Motion Ex. 5, Section 6.01.  If damage rendered the building unable

to be occupied, the Tenant had an obligation to restore or rebuild the building.  SRM Venue

Motion Ex. 5, Section 6.03(b)(2).  The lease also required that the sums recovered by SRM or

the Tenant under the insurances policies obtained by SRM or the Tenant were to be paid into a

special account in the name of the Landlord.  SRM Venue Motion Ex. 5, Section 6.03.

In the fall of 2017, Hurricanes Irma and Maria caused extensive damage to the premises.

Compl. ¶ 36.  At the time of the hurricanes, Sears had a contract of insurance, policy number

PTNAM1701557 (the "Policy"), to cover all risk of physical loss or damages up to a limit of

$440 million.[8]  *See generally*, Compl. Ex. B.  The Policy was issued by a market of insurers (the

"Underwriters"), a group which included the Plaintiffs.  *Id.* at ¶ 7, 25.  The Policy listed as

named insured "[t]he Sears Holding Corporation and any subsidiary . . . and any other party for

which the insured has the responsibility for providing insurance."  Compl. Ex. B.  The Policy

contract further stated that "[l]oss, if any, shall be adjusted with and payable to Sears Holding

Corporation or as directed by it."  *Id.*   In conjunction with the Policy, Aon Risk Services

Central, Inc. ("Aon") issued a Certificate of Property Insurance that listed as the insured Sears

Holding Corporation but also stated that "Santa Rosa Mall, LLC, 3 Pals Carib, LLC and

Commercial Centers Management, LLC are included as loss payee in accordance with the policy

---

[7]      Plaintiffs filed an amended complaint a week after this action was commenced.  The most substantive
amendment to the Complaint appears to be the addition of AIG UK as a plaintiff in the action.  AESA has reserved
its rights to further amend the complaint to add additional plaintiffs.  *See* Stipulation Regarding Standstill and
Setting Briefing Schedule [ECF No. 10] at 4.

[8]      AESA issued the Policy for a term period of Jun 1, 2017 and June 1, 2018.  Compl. ¶ 24.

provisions of the property policy." *Id.,* SRM Venue Motion Ex. 6. Asserting that it was a loss payee or additional insured under the Policy, SRM attempted to secure payment under the Policy for damage caused by the hurricanes and repeatedly requested information regarding the status of the claim under the Policy. *See* SRM Venue Motion Ex. 2, Ex. 3.

In October 2018, Sears and affiliated entities filed these chapter 11 cases. *See, e.g.,* ECF No. 1, Case No. 18-23538. After the commencement of these bankruptcy cases, SRM continued its efforts to obtain payment under the Policy, contacting Plaintiffs directly to assert SRM's right to payment and requesting information about claims under the Policy. *See, e.g.,* SRM Venue Motion Ex. 3 (including emails and letters to Plaintiffs from SRM requesting the status of the claim). In April 2019, Sears opted to reject its lease with SRM as part of the bankruptcy proceedings. *See* Notice of Rejection of Certain Unexpired Leases of Nonresidential Real Property [ECF No. 3449, Case No. 18-23538]. The Court subsequently approved that rejection. *See* Order Approving the Rejection of Unexpired Leases of Nonresidential Real Property [ECF No. 3884, Case No. 18-23538].

During the pendency of these bankruptcy cases, SRM sought various relief to protect its rights relating to the Policy on the premises. For example, SRM filed motions for relief from the automatic stay imposed by the bankruptcy proceedings so that it could proceed in litigation elsewhere or, in the alternative, to declare that the insurance proceeds from the Policy are not part of the bankruptcy estates. *See* ECF Nos. 3475, 5124, Case No. 18-23538; s*ee also* Motion for Entry of Order for the Debtor to: (I) Disclose Status of Insurance Claim; (II) Deposit Any Insurance Proceed Into Separate Account to be Used Exclusively to Repair the Insured Demised Premises; and (III) Alternatively, Find the Automatic Stay Inapplicable To the Insurance Proceeds [ECF No. 1240, Case No. 18-23538]. SRM's motions for relief from the automatic

stay were ultimately resolved by stipulation between Sears and SRM, under which the parties agreed to allow SRM to proceed with any action against Aon while SRM would withdraw its motions for stay relief. *See* Stipulation, Agreement, and Order between the Debtors and Santa Rosa Mall, LLC Granting Limited Relief from the Automatic Stay [ECF No. 5537, Case No. 18-23538]. SRM also initiated an adversary proceeding against Sears and the Tenant to seek damages for breach contract, unjust enrichment, aiding and abetting fraudulent misrepresentation, and to seek a declaratory judgment that the insurance proceeds are not part of the estate or that SRM had an equitable lien on the proceeds. *See Santa Rosa Mall LLC v. Sears Holding Corp.*, Adv. Pro. No. 19-08266 (the "SRM Adversary"). SRM and Sears ultimately entered into a Stipulation of Voluntary Dismissal without Prejudice to discontinue the SRM Adversary. *See* ECF No. 11, Case No. 19-08266.

Ultimately, Sears received payment in the amount of $46,332,916 under the Policy. Compl. ¶ 55. To resolve a dispute regarding the extent of certain losses, the Underwriters entered into a settlement agreement with Sears in or around January 2019. *Id.* ¶ 51; Ex. A (the "Settlement Agreement"). Under the Settlement Agreement, the Underwriters agreed to pay an additional $13,260,122 in exchange for Sears' agreement to release the Underwriters from liability for any and all claims that were made or could be made under the Policy related to the hurricanes. *Id.* ¶ 54, Ex. A. In addition, Sears agreed to indemnify the Underwriters for any claims made under the Policy. *Id.* In the Settlement Agreement, Sears also represented that it was the only party in interest with regard to the hurricane losses and claims under the Policy. *Id.* ¶ 53. SRM objected to the Settlement Agreement, arguing that the settlement was not valid because it had not first been approved by the Bankruptcy Court under Bankruptcy Rule 9019. *See* Hr'g Tr. 66:25-67:3 (February 24, 2020) [ECF No. 8464, Case No. 18-23538]. But this

Court rejected that argument, ruling that the Settlement Agreement was valid and properly

entered into as an ordinary course transaction.  *Id.* at 67:5-69:8; *see also* Hr'g Tr. 123:11-19

(April 23, 2020) [ECF No. 7892, Case No. 18-23538].  This conclusion was affirmed by the

District Court.  *See Santa Rosa Mall, LLC v. Sears Holdings Corp.*, 2021 WL 4429507 at *4

(S.D.N.Y. Sept. 27, 2021).

    In October 2019, the Court entered an order (the "Confirmation Order") confirming

Sears' Modified Second Amended Joint Chapter 11 Plan of Sears Holding Corporation and Its

Affiliated Debtors (the "Plan").  *See* ECF No. 5370, Case No. 18-23538.  The Plan specifically

provided that assets of the Debtor would vest in a liquidating trust; those assets would then be

used to make distributions to creditors.  Plan §§ 9.2, 10.2, 10.3.  Shortly after the Confirmation

Order was entered, counsel for Sears wrote to counsel to SRM to confirm that the injunction

provision in Section 15.8 of the Plan did not enjoin any actions against non-debtor third parties.

SRM Venue Motion, Ex. 1.  Subsequently, SRM filed another motion seeking to lift the

automatic stay to allow SRM to pursue claims against AESA, who is a plaintiff here.  *See*

Motion for and an Order Finding the Automatic Stay Inapplicable or, in the Alternative, for

Relief from The Automatic Stay [ECF No. 6317, Case No. 18-23538].  That motion was denied

by the Court, which concluded that "any litigation against the [U]nderwriters asserting that they

paid improperly here given the terms of the agreement is going to result in a claim under the

[S]ettlement [A]greement."  Hr'g Tr. 122:25–123:3 (April 23, 2020); *see also* Order Denying

Motion of Santa Rosa Mall, LLC for Relief from the Automatic Stay [ECF 7881, Case No. 18-

23538] (the "Lift Stay Order").  The Court noted that it did not "see, except in very

distinguishable circumstances, authority that under these circumstances would require the insurer

to pay twice, particularly in light of the terms of the [P]olicy itself which have the money coming

to Sears." *Id.* at 124:1-15.  SRM appealed the decision, *see* ECF No. 7952, Case No. 18-23538, but the District Court affirmed this Court's ruling.  *See Santa Rosa Mall, LLC*, 2021 WL 4429507.   SRM then filed a Notice of Appeal regarding the District Court decision, but SRM ultimately stipulated to dismiss that appeal.  *See* ECF Nos. 21, 22, Case No. 20-cv-03923-PMH. Accordingly, the decision denying relief from the automatic stay became final in January 2023. *Id.*

In December 2022, SRM filed a Notice Prior to Initiating a Civil Action with the Office of the Insurance Commissioner for Puerto Rico and then about a week later filed an amended Notice Prior to Initiating a Civil Action and provided a copy to Plaintiffs.  Compl. Ex. E, F. Before SRM could file suit, however, Plaintiffs filed this adversary proceeding in February 2023 to seek enforcement of the indemnity provision against Sears, a permanent injunction prohibiting SRM from proceeding against the Plaintiffs on the Policy, and a declaratory judgment that SRM is not entitled to recover for any alleged loss or damage due to the hurricanes under the Policy. *See generally,* Compl.  The PI Motion now at issue was filed shortly after the Complaint.  *See* ECF No. 2.  Ultimately, however, SRM did file its own complaint a few days later in the United States District Court for the District of Puerto RICO against AESA and the rest of the Underwriters (the "Puerto Rico Action").  *See* ECF No. 1, Case No. 23-1076-PAD.  To avoid the inefficiency of litigation proceeding in multiple forums at the same time, the parties agreed that none of the parties would file any pleadings in the Puerto Rico Action—and that the Defendants in the Puerto Rico Action need not appear in or respond to the Puerto Rico Action—until twenty one days after the disposition of the PI Motion in this Court.  *See* Stipulation regarding Standstill

and Setting Briefing Schedule at 4 [ECF No. 10].[9] The Court heard argument on the PI Motion

and the Venue motion in July 2023 and took the matters under advisement.

**Discussion**

### I.   Jurisdiction

Before proceeding to the merits of the motions before the Court, the Court first will

address its jurisdiction to hear this matter.  It is well settled that once confirmation of a plan of

reorganization occurs, the bankruptcy court's jurisdiction shrinks.  *Penthouse Media Group v.*

*Guccione (In re General Media, Inc.)*, 335 B.R. 66, 73 (Bankr. S.D.N.Y. 2005).  To invoke the

jurisdiction of the bankruptcy court post-confirmation, a party must satisfy two requirements:

first, the matter must have a "close nexus to the bankruptcy plan or proceeding, as when a matter

affects the interpretation, implementation, consummation, execution, or administration of the

confirmed plan or incorporated litigation trust agreement;" and second, "the plan must provide

for the retention of jurisdiction over the dispute."  *Id.* at 73-74 (internal citations omitted)*; see*

*also Cantor v. Am. Banknote Corp.,* 2007 WL 3084966, at *3 (S.D.N.Y. Oct. 22, 2007).  The

Court finds that both prongs for jurisdiction are met here.

To determine whether this action has a close nexus to the Plan under the first prong, the

Court looks not only to the Complaint but also the procedural history here.  This action arises out

of SRM's pursuit of its purported rights under the Policy against the Underwriters.  *See, e.g.*,

Compl. ¶ 3.  But while this litigation would appear at first blush to be a dispute between two

non-debtors, the Settlement Agreement entered into between Plaintiffs and the Debtors—and

approved by the Court— creates an immediate impact on Sears.  The Settlement Agreement

---

[9]       The PI motion initially sought a temporary restraining order preventing SRM from commencing or
prosecuting any action against Plaintiffs pending a ruling on this motion.  *See generally,* PI Motion.  In light of the
stipulation providing for a standstill of the Puerto Rico Action, however, the Plaintiffs' request for a TRO is
effectively moot and the Court will consider only that branch of the PI Motion requesting a preliminary injunction.

provides that Sears will indemnify and defend the Underwriters for litigation such as this action. *See* Settlement Agreement ¶ 6 (stating that SRM will "hold harmless, indemnify, and defend [the Underwriters] from any and all actions, demands, and claims under the [Policy]" that may be asserted by any party); *see also* Hr'g Tr. 123:11-19 (April 23, 2020) (the Court stating that it had ruled that the Settlement Agreement was binding); *cf. Santa Rosa Mall, LLC*, 2021 WL 4429507 at *4 (affirming the decision of this Court that the Settlement Agreement was enforceable).  In light of Sears' duty to indemnify and defend under the Settlement Agreement, any action involving the Policy requires Sears to incur costs to defend that action, regardless of whether the action results in a judgment or settlement. Those post-petition costs would directly dissipate the assets of the liquidating trust, and thus directly impact the liquidation of the estate's assets.  *See Rubin Baum Levin Constant & Friedman v. Mushkin (In re Masterwear Corp*., 241 B.R. 511, 515–16 (Bankr. S.D.N.Y. 1999) ("Where the obligation to indemnify is contractual and absolute, the third-party litigation is "related to" the bankruptcy case."); *Binder v. Price Waterhouse & Co., (In re Resorts Int'l., Inc.)*, 372 F.3d 154, 163 (3rd Cir. 2004) (finding that the court lacked jurisdiction to hear an adversary proceeding against an accounting firm alleging malpractice by that firm because the claim "[did] not directly affect the debtor or the liquidation of the estate's assets.").  While one count of Plaintiffs' Complaint seeks to enforce the indemnity and duty to defend provisions given Sears' prior refusal to honor those provisions, *see* Compl. ¶¶ 74-81, Sears now acknowledges its duty to indemnify AIG and defend this action.  Hr'g Tr. 14:12-18 (July 19, 2023) (ECF No. 40).  As noted by Sears' counsel, every dollar spent in defense of this action (or any other action involving the Policy) is a dollar less that can be distributed to creditors.

Notwithstanding these facts, SRM contends that SRM cannot be bound by a contract to which it is not a party and that SRM did not submit itself to the jurisdiction of the Court. *See* SRM Venue Motion at 4, 9. SRM further complains that the Underwriters and Sears acted with "deceit" in negotiating the Settlement Agreement without SRM's participation. SRM Reply at 11. But SRM's protest about the history of this dispute cannot undo the central dispositive fact that the Settlement Agreement is binding and enforceable. It was approved by this Court and that decision was affirmed on appeal. *See Santa Rosa Mall, LLC*, 2021 WL 4429507 at *4. As part of that Settlement Agreement, the Plaintiffs made a payment in reliance on the indemnification and defense obligation by Sears that would spare the Plaintiffs from further litigation. SRM cannot now collaterally attack the Settlement Agreement in this litigation; to do so would allow SRM to do indirectly what it failed to do directly.

Turning to the second prong, the Plan provided that this Court retained jurisdiction "to hear and determine settlements and disputes with respect to any liquidating trust asset, including the Preserved Causes of Action" and "to issue injunctions, enter and implement other orders, or take such other actions as may be necessary to restrain interference by any entity with consummation or enforcement of the Plan." Plan §§16.1(b), 16.1(g). As the Plan specifically directed retention of jurisdiction for issues that impact that liquidating trust assets, the second prong for jurisdiction is satisfied. SRM's lawsuit will impact the liquidating trust by virtue of Sears' duty to defend and indemnify.

Having determined that this Court possesses jurisdiction to resolve the instant dispute, the Court will turn to addressing the substantive relief requested by the parties.

## II.    **Motion for Preliminary Injunction**

### A.  Standard

Rule 65 of the Federal Rules of Civil Procedure, which is made applicable to bankruptcy

proceedings by Rule 7065 of the Federal Rules of Bankruptcy Procedure, provides courts with

authority to issue preliminary injunctions on notice to an adverse party.  A party seeking a

preliminary injunction must show (1) they are likely to succeed on the merits, (2) that they are

likely to suffer irreparable harm without the preliminary relief, (3) that the balance of equities

tips in their favor, and (4) that an injunction is in the public interest.  *Winter v. Natural  Res.*

*Defense Council, Inc.*, 555 U.S. 7, 20 (2008).  As to the first factor, a party may show either a

likelihood of success on the merits or a "sufficiently serious questions going to the merits to

make them a fair ground for litigation and a balance of hardships tipping decidedly toward the

party requesting the preliminary relief."  *Am. Civil Liberties Union v. Clapper*, 785 F.3d 787,

825 (2d Cir. 2015) (quoting *Christian Louboutin S.A. v. Yves Saint Laurent Am. Holdings, Inc.*,

696 F.3d 206, 215 (2d Cir. 2012)).

"A preliminary injunction is an extraordinary remedy never awarded as of right."  *Sajous*

*v. Decker*, 2018 US Dist LEXIS 86921, at *16 (S.D.N.Y. May 23, 2018) (quoting *Winter*, 555

U.S. at 24).  When evaluating these factors, the court will take a "flexible approach and no one

factor is determinative."  *Nev. Power Co. v. Calpine Corp. (In Re Calpine Corp.)*, 365 B.R. 401,

409 (2007) (quoting *Hawaii Structural Ironworkers Pension Tr. Fund v. Calpine Corp.*, *Inc.,*

2006 WL 3755175, at *4 (S.D.N.Y. Dec. 20, 2006)).  But a showing of irreparable harm is

"perhaps the single most important prerequisite for the issuance of a preliminary injunction."

*Kamerling v. Massanari*, 295 F.3d 206, 214 (2d Cir. 2002) (quoting *Bell & Howell: Mamiya Co.*

*v. Masel Supply Co.*, 719 F.2d 42, 45 (2d Cir. 1983)).  Irreparable harm must be shown to be

actual and imminent, "not remote or speculative." *Id.*  Thus, a preliminary injunction should only be issued where the court's intervention is necessary to protect property rights against irremediable injuries.  *Weinberger v. Romero-Barcelo*, 456 U.S. 305, 312 (1982) (quoting *Cavanaugh v. Looney*, 248 U.S. 453, 456 (1919)).  A preliminary injunction should only be granted if the movant clearly meets the burden of persuasion.  *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997).

"The Supreme Court has observed that the decision of whether to award preliminary injunctive relief is often based on 'procedures that are less formal and evidence that is less complete than in a trial on the merits.'"  *Mullins v. City of New York*, 626 F.3d 47, 51–52 (2d Cir. 2010) (quoting *Univ. of Tex. v. Camenisch*, 451 U.S. 390, 395 (1981)).  When considering a motion for a preliminary injunction, "the Court may rely on affidavits, depositions, and sworn testimony."  *Greater Chautauqua Fed. Credit Union v. Marks*, 600 F. Supp. 3d 405, 415 (S.D.N.Y. 2022) (citing *Mullins,* 626 F.3d at 51-52).  The Court may also consider hearsay evidence.  *See Mullins,* 626 F.3d at 52.  Accordingly, the Court will draw the facts necessary for the disposition of the PI Motion from the declarations and exhibits attached to the Complaint, the PI Motion and Venue Motion, as well as filing on the docket in this case and the main bankruptcy case, *In re Sears Holding Corp.,* 18-23538-shl, of which the Court may take judicial notice.  *See Teamsters Nat'l Freight Indus. Negotiating Comm. the Int'l Bhd. of Teamsters, and its Affiliated Local Unions v. Howard's Express, Inc. (In re Howard's Express, Inc.)*, 151 F. App'x 46, 48 (2d Cir. 2005).  Indeed, the relevant facts here are not disputed as the parties' disagreement is about the legal significance of those facts.

### B. The Four Factors

#### 1. Likelihood of Success on the Merits

"[T]o demonstrate a likelihood of success on the merits, plaintiffs are not required to show that success on their complaint is an absolute certainty, but rather that the probability of success is 'better than fifty percent.'" *V.D. v. State*, 403 F. Supp. 3d 76, 87 (E.D.N.Y. 2019) (quoting *People of New York ex rel. Spitzer v. Cnty. of Delaware*, 82 F. Supp. 2d 12, 17 (N.D.N.Y. 2000)). Both the Plaintiffs and Sears argue that Plaintiffs are likely to succeed on the merits. As a preliminary matter, Plaintiffs and Sears assert that this Court has already ruled in favor of Plaintiffs on the same matter. *See, e.g.,* Sears Mem. in Support ¶ 13 ("Moreover, the Puerto Rico Action and this adversary proceeding concern an issue that the Parties litigated before and that was already decided by the Bankruptcy Court."); PI Motion at 16 ("AESA's claims are based in part upon the Court's April 30, 2020 Order, which decided SRM's motion to lift the automatic stay.") Indeed, this Court previously stated that it was "having a hard time seeing how [SRM] has a cause of action against the underwriters," *see* Hr'g Tr. 53:9-11 (February 24, 2020), and the District Court held that "Appellant has not shown that this proposed claim is independent of the Insurance Policy." *Santa Rosa Mall,* 2021 WL 4429507 at *5.

But as SRM correctly asserts—and as Sears and Plaintiffs conceded during oral argument—this Court's only ruling concerned SRM's motion to lift the automatic stay, a ruling later affirmed by the District Court; that motion was denied, preventing SRM from pursuing its claims against AESA and other insurers. *See* Lift Stay Order, *see also Santa Rosa Mall,* 2021 WL 4429507. It is well settled that motions for relief from the automatic stay are summary proceedings and do not litigate issues on the merits. *See Nat'l Westminster Bank, U.S.A. v. Ross*, 130 B.R. 656, 670 (S.D.N.Y. 1991), *aff'd sub nom. Yaeger v. Nat'l Westminster*, 962 F.2d 1 (2d

14

Cir. 1992) (holding that an action was not barred by the doctrine of *res judicata* because the claim could not have been raised and litigated in the context of a lift stay motion); *In re Kolnberger*, 603 B.R. 253, 264–65 (Bankr. E.D.N.Y. 2019) (stating that stay relief litigation is summary in nature).[10]  Thus, as a technical matter, the Court's prior statements did not constitute a ruling on the merits of SRM's right to insurance proceeds.[11]  *See, e.g., Queenie, Ltd. v. Nygard Int'l,* 321 F.3d 282, 287 (2d Cir. 2003) (discussing the findings required to extend the automatic stay to a non-debtor).

But while this issue has not previously been fully litigated on the merits, the Court finds the reasoning of the prior decision to be well founded and persuasive.  As a threshold matter, the Settlement Agreement entered into between Sears and the Plaintiffs resolved "*any and all* claims that were made, could have been made, or could be made in the future under the Policies."  *See* Settlement Agreement (emphasis in original).  Moreover, a review of the plain terms of the Policy show a strong likelihood that Plaintiffs will prevail here.  Of the three counts asserted in the Complaint, one addresses Sears' obligation to defend and indemnify the Plaintiffs, *see* Compl. ¶¶ 74-81, while the other two counts seek to permanently enjoin SRM from commencing an action against Plaintiffs and seek a declaratory judgment that, *inter alia,* SRM has no claim against the Plaintiffs.  Compl. ¶¶ 82-121.  As to the first count, Sears has already (correctly) conceded its obligation to indemnify and defend Plaintiffs, consistent with the clear terms of the Settlement Agreement.  Thus, Plaintiffs have already prevailed on the first cause of action.

---

[10]      SRM also argues that the Lift Stay Order is now moot, as the automatic stay dissolved when the Plan was confirmed, and the property of the estate vested in the Debtor, therefore there cannot be a collateral attack on the order or any impact on the bankruptcy estate.  SRM Venue Motion at 21-22 (citing *In re Park Ave. Radiologists, P.C.*, 450 B.R. 461, 468 (Bankr. S.D.N.Y. 2011)).  While neither the Plaintiffs nor Sears argues that the automatic stay is still in effect, *see* Plan ¶ 13.4, it is clear that SRM's suit will impact the liquidating trust's assets as explained above.

[11]      In light of this conclusion, the Court need not reach SRM's argument that the order denying the motion to lift stay is now moot in light of the confirmation of the Plan.  *See* SRM Venue Motion at 8.

As to the other counts, SRM strongly disputes that Plaintiffs are likely to prevail, asserting that SRM is a loss payee or additional insured under the Policy.  *See* SRM Venue Motion at 24, 32; *see also* SRM Venue Motion Ex. 2 (stating that the Certificate of Property Insurance lists SRM as a loss payee).  But the Court disagrees.  The plain terms of the Policy identify Sears Holding Corporation as the named insured.  Moreover, the Policy unambiguously states that loss "*shall* be adjusted with and payable to Sears Holdings Corporation or as directed by it."  *See* Policy (emphasis added).   SRM is therefore unlikely to succeed on a claim that SRM was the only rightful recipient of the insurance funds given that Plaintiffs were bound by the Policy to pay Sears.  Indeed, SRM appears to have conceded at other times in these bankruptcy proceedings that SRM is not a loss payee or beneficiary under the Policy.  *See* Hr'g Tr. 77:4-8 (March 21, 2019) [ECF No. 3758, Case No. 18-23538] ("The Court: So, the issue is though, as I understand it, although I haven't gotten until just now, the [Policy] itself does not name the landlord as a loss payee or beneficiary, right?  [Counsel for SRM]: Correct.").

SRM's reliance on the Certificate of Property Insurance to establish its status as an additional insured is misplaced.  While the document may list SRM as an additional insured, the Certificate of Property Insurance makes clear that it is issued "as a matter of information only" and that it does not "amend, extend or alter the coverage afforded by [the Policy]."  Compl., Ex. C.  SRM asserts that the terms of the Policy grant third party insureds a right of recovery, presumably based on the definition of named insured in the Policy that states the named insured includes "any other party for which the insured has the responsibility for providing insurance."  But this language does not change the fact that Sears is the primary insured and the loss payee.  In sum, SRM does not appear to have a basis to argue that Plaintiffs should not have paid Sears.  Of course, Sears indisputably had a contractual obligation to SRM, including the obligation to

16

maintain insurance for the benefit of the Landlord and to deposit insurance proceeds in a special account in the Landlord's name. *See* SRM Venue Motion Ex 5 ¶¶ 6.01 6.03. But breaches of those contractual obligations would give rise to a breach of contract claim against Sears, not Plaintiffs. Notably, such a claim would make SRM an unsecured creditor in these bankruptcy cases, rather than a party with special entitlement to specific funds.[12] For all these reasons, then, the Court finds that the Plaintiffs have shown a likelihood of success on the merits, or at the very least, that there are "sufficiently serious questions going to the merits to make them a fair ground for litigation." *Polymer Tech. Corp. v. Mimran*, 37 F.3d 74, 77–78 (2d Cir. 1994).

2. Irreparable harm

"To establish irreparable harm, a party seeking preliminary injunctive relief must show that 'there is a continuing harm which cannot be adequately redressed by final relief on the merits' and for which 'money damages cannot provide adequate compensation.'" *Kamerling*, 295 F.3d at 214 (quoting *N.Y. Pathological & X–Ray Labs., Inc. v. INS*, 523 F.2d 79, 81 (2d Cir. 1975)). In other words, irreparable injury occurs when "but for the grant of equitable relief, there is a substantial chance that upon final resolution of the action the parties cannot be returned to the positions they previously occupied." *Brenntag Int'l Chems., Inc. v. Bank of India*, 175 F.3d 245, 249 (2d Cir. 1999). Further, "irreparable harm must be shown to be actual and imminent, not remote or speculative." *Kamerling*, 295 F.3d at 214. In the bankruptcy context, the irreparable harm requirement may be satisfied if "the action to be enjoined is one that threatens the reorganization process or which would impair the court's jurisdiction with respect to a case before it." *Nev. Power Co. v. Calpine Corp. (In Re Calpine Corp.),* 354 B.R. 45, 48

---

[12] The Court's conclusion today is consistent with the prior decisions in the parties' dispute. "[SRM] has not shown that this [proposed lawsuit against the Underwriters to determine whether the claim was properly paid] is independent of the Insurance Policy." *Santa Rosa Mall*, 2021 WL 4429507 at *5.

(Bankr. S.D.N.Y. 2006), *aff'd*, 365 B.R. 401 (S.D.N.Y. 2007) (citing *In re Alert Holdings, Inc.*,

148 B.R. 194, 199 (Bankr. S.D.N.Y. 1992)); *In re Lyondell Chem. Co.*, 402 B.R. 571, 590

(Bankr. S.D.N.Y. 2009). As discussed above, irreparable harm is the "most important

prerequisite for the issuance of a preliminary injunction." *Millennial Plastic Surgery, PLLC v.

James*, 2021 WL 5988322, at *1 (S.D.N.Y. Dec. 16, 2021) (quoting *Bell & Howell*, 719 F.2d at

45).

 Plaintiffs assert that allowing SRM to commence or prosecute an action that is

"tantamount to a collateral attack on this Court's prior rulings" constitutes irreparable harm. PI

Motion at 14-15. Similarly, Sears asserts that any action by SRM will conflict with prior orders

of this Court and further asserts that litigating the same issues in multiple forums will deplete the

estate of its remaining assets. Sears Mem. in Support ¶¶ 12, 26; *see also* Sears Reply ¶ 6. SRM

strongly disputes that the Puerto Rico Action challenges any prior rulings of this Court, and

further asserts that Plaintiffs and Sears cannot establish an irreparable injury because any injury

is "self-inflicted." S*ee, e.g.,* SRM Venue Motion. at 6-7, 12; SRM Reply at 36 (citing *Expedia,

Inc. v. United Airlines*, 2019 U.S. Dist. LEXIS 59037, at *16 (S.D.N.Y. 2019) ("'[S]elf-inflicted'

harms are not considered irreparable").

 The Court finds that the Plaintiffs and Sears have the better of the argument. This

adversary proceeding immediately triggers Sears' duty to defend against any lawsuit brought

against the Underwriters and requires Sears to indemnify the Underwriters in the event of an

adverse judgment. SRM seeks to avoid this problem by insisting that "Debtors' bankruptcy case

has concluded" and that "[t]he claim seeks compensations by the Underwriters and only

Underwriters (not Debtors) . . . [not] estate assets." SRM Reply at 30, 32. But SRM's position

ignores the well-established principle that an obligation to defend will have an immediate impact

on the assets of a bankruptcy liquidating trust, creating irreparable harm.  *See In re Netia Holdings, S.A.*, 278 B.R. 344, 352 (Bankr. S.D.N.Y. 2002) ("It is well established, at least in this district, that the dissipation of the finite resources of an insolvent estate constitutes irreparable injury."); *In re Kwok*, 2023 WL 186964, at *20 (Bankr. D. Conn. Jan. 13, 2023), *appeal dismissed*, 2023 WL 2914493 (D. Conn. Apr. 12, 2023) ("dissipation of assets and reduced recoveries to creditors . . . may be considered irreparable harm"); *see also In re Lion Cap. Grp.*, 44 B.R. 690, 703 (Bankr. S.D.N.Y. 1984) (noting that a drain on a debtor's resources through having to monitor or participate in other actions can constitute irreparable injury); *In re Roman Cath. Diocese of Syracuse, New York*, 628 B.R. 571, 581 (Bankr. N.D.N.Y. 2021) (discussing the harm that could result from allowing litigation to continue which would imminently deplete the assets intended to fund a plan).  Not surprisingly then, injunctions such as the one sought here often play an important part in a debtor's reorganization to centralize disputes and ensure consistent recoveries by creditors.  *See In re Drexel Burnham Lambert Grp., Inc.*, 960 F.2d 285, 293 (2d Cir. 1992).  As in *Drexel,* the Settlement Agreement here was crucial to bringing additional assets into the Debtors' estate.  Indeed, it was unlikely that the Underwriters would have agreed to settle without the indemnification provision to shield them from additional litigation and the Court's continuing jurisdiction to interpret and enforce the Settlement Agreement.  *See id.*

SRM cites a smattering of cases to argue that expending time and funds to litigate does not constitute an irreparable harm.  SRM Reply at 36 (citing *Prince v. Croop*, 1997 U.S. Dist. LEXIS 21585, at *3 (N.D.N.Y. 1997)); *see also Renegotiation Bd. v. Bannercraft Clothing Co.*, 415 U.S. 1, 24 (1974) ("Mere litigation expense, even substantial and unrecoupable cost, does not constitute irreparable injury.") (internal citations omitted).  But the Court finds that SRM's case law is distinguishable or against the vast weight of authority.  For example, in *Bruce v. Martin*, 680 F.

Supp. 616, 620–22 (S.D.N.Y. 1988), the Court held that merely defending a collection suit did

not constitute irreparable injury, but recognized that courts could enjoin state court proceedings

"to protect a judgment that is imminent in proceedings that have already exhausted considerable

time and resources in the federal court." *Id.* at 622.  Indeed, courts have found irreparable harm

where a party is required to defend multiple actions "when those same proceedings could be

resolved globally in a single, pending declaratory judgment action."   *State Farm Mut. Auto. Ins.*

*Co. v. Parisien*, 352 F. Supp. 3d 215, 233 (E.D.N.Y. 2018).  Similarly, in *Govt. Emp. Ins. Co. v.*

*Binns*, 2022 US Dist LEXIS 176423, at *16-17 (E.D.N.Y. Sep. 28, 2022), the court counseled

against piecemeal litigation, stating "[c]ourts in this district have consistently found irreparable

harm where there is concern 'with wasting time and resources in an arbitration with awards that

might eventually be, at best, inconsistent with this Court's ruling, and at worst, essentially

ineffective.'" (quoting *Allstate Ins. Co. v. Elzanaty*, 929 F. Supp. 2d 199, 222 (E.D.N.Y. 2013)).

This principle applies in full force here as SRM is an unsecured creditor by virtue of its breach of

contract claim but is seeking redress in another court in a way that will harm all creditors of

Sears.

　　　　SRM's contention that any harm suffered by Plaintiffs or the Debtor is self-inflicted also

does not change the result here.  *See* SRM Venue Motion at 8, SRM Reply at 36.  SRM

complains that the Underwriters and Debtors "both knew of Santa Rosa's claim as an additional

insured or loss payee under the Policy," thus implying that the Underwriters knew it was

improper to pay Sears.  SRM Reply at 8.  But the Court cannot make such a finding on this

record.  As noted above, the Policy specifically requires the loss to be adjusted with Sears, and

SRM's reliance on the Certificate of Property Insurance is belied by the terms of the Policy.

Indeed, SRM does not (and cannot) claim that Sears is not a named insured.  While Sears may

have had an independent contractual obligation to deposit insurance proceeds into a separate

account or to repair the premises, such claims are breach of contract claims against Sears.

### 3.   Balance of Equities

Both Sears and Plaintiffs argue that a balancing of hardships strongly favors Plaintiffs

given the potential for conflicting rulings and the fact that SRM would face no hardship from

litigating its claims in this Court.  PI Motion at 16, Sears Mem. in Support ¶ 32.  Both Plaintiffs

and Sears also note that SRM has already submitted to the jurisdiction of this Court.  *See* PI

motion at 16.  SRM disagrees.  It argues that that the balancing of hardships weighs strongly in

its favor, including the fact that SRM's business and property are located in Puerto Rico, SRM

has been waiting four years to be able to pursue its claims, and SRM does not have business in

New York.  SRM Venue Motion at 10.   SRM objects strongly to the notion that it has already

submitted to the jurisdiction of this Court, asserting that "there is no relationship between

potential conflicting rulings and Santa Rosa having submitted to the jurisdiction of this Court and

the claim which Santa Rosa is trying to pursue."  SRM Venue Motion at 9.

The Court finds that the balancing of harms weighs in favor of the Plaintiffs and Sears.

The Court finds that the risk of piecemeal litigation is likely to cause significant harm to Sears

and Plaintiffs, particularly in light of the extensive procedural history litigating the Policy here.

That concern is borne out by the current motions, where SRM has sought to revisit matters

addressed in prior decisions of this Court and of the District Court on appeal.  By contrast, the

only harm to SRM will be an inability to litigate this insurance contract dispute in SRM's

preferred forum of Puerto Rico.  SRM Venue Motion at 10.  But such a concern is minimized

here given that this is a contract dispute over the rights to insurance proceeds, a dispute with

which this Court is well acquainted.

21

4.   Injunction in the Public Interest

Finally, the Court considers whether issuing an injunction is in the public interest. *Clapper*, 785 F.3d at 825 (citing *Winter*, 555 U.S. at 20).   The focus for determining the public interest element for granting an injunction is "how the parties' specific actions would impact the public at large." *In re Homaidan*, 650 B.R. 372, 407 (Bankr. E.D.N.Y. 2022), *appeal dismissed sub nom. Navient Sols., LLC v. Homaidan*, 2022 WL 17252459 (E.D.N.Y. Nov. 28, 2022) (internal citation omitted); *see also U.S. S.E.C. v. Citigroup Glob. Mkts. Inc.*, 673 F.3d 158, 163, n. 1 (2d Cir. 2012) ("[W]hen a court orders injunctive relief, it should ensure that injunction does not cause harm to the public interest.").   In the context of bankruptcy proceedings, the public interest is served by permitting Debtors to "enjoy the benefits of their protracted chapter 11 proceedings, including those that derive from the Plan [and] the Confirmation Order [ ]. Moreover, they should be allowed to do so without the substantial burden and constraints of extraneous litigation and the resulting disruptions, risks, and expenses generated by the continued prosecution of the [other lawsuits]." *In re Chateaugay Corp.*, 201 B.R. 48, 72 (Bankr. S.D.N.Y. 1996), *aff'd in part*, 213 B.R. 633 (S.D.N.Y. 1997).   Further "[t]here is a strong public interest in avoiding the dissipation of corporate assets that rightfully should go to creditors or other stakeholders." *In re Roman Cath. Diocese of Rockville Ctr., N. Y.*, 651 B.R. 622, 667 (Bankr. S.D.N.Y. 2023) (quoting *In re Soundview Elite Ltd.*, 543 B.R. 78, 118 n. 210 (Bankr. S.D.N.Y. 2016)).

The Court finds that a preliminary injunction would serve the public interest here. SRM's claim against the Plaintiffs would have a direct impact on the assets of the Debtor and would reduce the recovery by other creditors.   It is appropriate to address the claims of this

creditor *pari passu* with claims of a similar nature in a single forum and not be forced to engage

in piecemeal litigation elsewhere that will negatively impact all creditors.

### C. Bond

Rule 65 of the Federal Rules of Civil Procedure state that "the court may issue a

preliminary injunction . . . only if the movant gives security in an amount that the court considers

proper to pay the costs and damages sustained by any party found to have been wrongfully

enjoined or restrained." Fed. R. Civ. P. 65(c).  A bond "assures the enjoined party that it may

readily collect damages from the funds posted in the event that it was wrongfully enjoined, and

that it may do so without further litigation and without regard to the possible insolvency of the

plaintiff."  *Nokia Corp. v. InterDigital, Inc.*, 645 F.3d 553, 557 (2d Cir. 2011) (citing *Continuum

Co., Inc. v. Incepts, Inc.,* 873 F.2d 801, 803 (5th Cir.1989)).  Additionally, "the bond provides

the plaintiff with notice of the maximum extent of its potential liability."  *Id.*   Nevertheless, "a

trial court may, in the exercise of discretion, determine a bond is unnecessary to secure a

preliminary injunction 'if there is an absence of proof showing a likelihood of harm.'"  *Coquina

Oil Corp. v. Transwestern Pipeline Co.*, 825 F.2d 1461, 1462 (10th Cir. 1987) (quoting

*Continental Oil Co. v. Frontier Refining Co.,* 338 F.2d 780, 782 (10th Cir. 1964)).

Plaintiffs argue that they should not be required to post a bond because SRM would not

be harmed if it were enjoined from prosecuting the Puerto Rico Action.  PI Motion at 18.  SRM

strenuously disagrees, arguing that it is suffering due to its inability to obtain the insurance

proceeds and unable to lease the property formerly occupied by the Tenant.  SRM Venue Motion

at 11.  SRMS asserts that the Plaintiffs should be required to post a bond of no less than $10

million.  *Id.*  at 12.  While SRM can certainly claim harm from not receiving the insurance

proceeds, that event is a function of the wording of the Policy.  As discussed above, SRM does

not appear to have had a right to demand payment of the proceeds from the Insurers, but instead

its claim is one against Sears.  The question now is what forum is most appropriate for litigating

the dispute in its current posture.  Accordingly, the Court will exercise its discretion to waive the

bond requirement, as the injuries that SRM might suffer as a result of the injunction are minimal.

### III.   <u>SRM's Motion to Dismiss or Transfer Venue</u>

Having determined that a preliminary junction is appropriate, the Court turns to SRM's

cross-motion seeking dismissal of the complaint or a transfer of venue pursuant to 28 U.S.C. §§

1404(a) and 1406(a).

### A. Dismissal For Improper Venue

SRM first seeks dismissal of the instant action under 28 U.S.C. § 1406 as well as Fed. R.

Civ. Pro 12(b)(3), which provides for dismissal for improper venue.  28 U.S.C. §1406(a)

provides that "[t]he district court of a district in which is filed a case laying venue in the wrong

division or district shall dismiss, or if it be in the interest of justice, transfer such case to any

district or division in which it could have been brought."  As SRM itself acknowledges, however,

this provision "allow[s] dismissal only when venue is 'wrong' or 'improper.' Whether venue is

'wrong" or 'improper' depends exclusively on whether the court in which the case was brought

satisfies the requirements of federal venue laws" which are governed by 28 U.S.C. § 1391.  *Atl.*

*Marine Constr. Co. v. U.S. Dist. Ct. for W. Dist. of Texas*, 571 U.S. 49, 55 (2013).  But SRM

does not—and cannot—argue that this case does not satisfy the requirements of federal venue

laws.  A civil action may be brought in  "(1) a judicial district in which any defendant resides, if

all defendants are residents of the State in which the district is located; (2) a judicial district in

which a substantial part of the events or omissions giving rise to the claim occurred, or a

substantial part of property that is the subject of the action is situated; or (3) if there is no district

in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action." 28 U.S.C. § 1391(b).  Plaintiffs' claims include enforcement of the indemnity provisions of the Settlement Agreement.  *See* Compl. ¶¶ 74-81.  The Settlement Agreement was entered into while Sears was a Debtor in a bankruptcy case in this judicial district.  This Court has already ruled on the enforceability of the Settlement Agreement and has retained jurisdiction over matters such as this one post confirmation.  Hr'g Tr.  67:5-69:8 (February 24, 2020); *see also* Hr'g Tr. 123:11-19 (April 23, 2020).  Accordingly, it is clear that Plaintiff has made *prima facie* showing that "a substantial part of the events or omissions giving rise to the claim occurred" in this district.  28 U.S.C. § 1391(b); *see also D'Anzieri v. Harrison Glob. LLC*, 2022 WL 17404254, at *9 (S.D.N.Y. Dec. 2, 2022) (citing *Gulf Ins. Co. v. Glasbrenner*, 417 F.3d 353, 355 (2d Cir. 2005) ("To survive a motion to dismiss for improper venue, 'the plaintiff need only make a prima facie showing of venue.'").  *Id. (*noting that "Section 1391(b)(2) does not restrict venue to the district in which the 'most substantial' events or omissions giving rise to a claim occurred.") (internal citations and quotations omitted).  Accordingly, the Court denies SRM's motion to dismiss the matter for improper venue.

### B.  Transfer of Venue

In addition to the improper venue statute of Section 1406(a), 28 U.S.C.S. § 1404(a) provides for a transfer to another district or division "[f]or the convenience of parties and witnesses, in the interest of justice . . . to any other district or division where it might have been brought or to any district or division to which all parties have consented."  Section 1404 "is purposed to prevent waste of time, energy and money and to protect litigants, witnesses and the public against unnecessary inconvenience and expense."  *Indian Harbor Ins. Co. v. Factory Mut.*

*Ins. Co.*, 419 F. Supp. 2d 395, 400–01 (S.D.N.Y. 2005) (internal citations and quotations

omitted).   Courts have "broad discretion in making determinations of convenience under Section

1404(a) and notions of convenience and fairness are considered on a case-by-case basis."

*Capitol Recs., LLC v. VideoEgg, Inc.*, 611 F. Supp. 2d 349, 365 (S.D.N.Y. 2009) (quoting *D.H.*

*Blair & Co., Inc. v. Gottdiener*, 462 F.3d 95, 106 (2d Cir. 2006)).

To justify transfer of venue, the moving party must show (1) the action is one that could

have been brought in the district to which the movant wants it transferred, and (2) the transfer

would be appropriate based on convenience of parties and witnesses, and would be in the

interests of justice.  *Posven, C.A. v. Liberty Mut. Ins. Co.*, 303 F. Supp. 2d 391, 401 (S.D.N.Y.

2004).   Under Section 1404(a), courts generally consider nine factors in determining whether

transfer is appropriate: (1) convenience of witnesses; (2) convenience of parties; (3) location of

relevant documents and access to sources; (4) "locus" of operative facts; (5) ability to compel

unwilling witnesses; (6) relative means of each party; (7) familiarity of each district with the

governing law; (8) weight given to the plaintiff's choice of forum; and (9) judicial economy and

the interests of justice.  *New York Marine & Gen. Ins. Co. v. Lafarge N. Am., Inc.*, 599 F.3d 102,

112 (2d Cir. 2010); *see also Herbert Ltd. P'ship v. Elec. Arts Inc.*, 325 F. Supp. 2d 282, 285-86

(S.D.N.Y. 2004).   "The convenience of both party and nonparty witnesses is probably considered

the single most important factor in the analysis of whether a transfer should be granted."

*Howard v. Four Seasons Hotel*, 1997 U.S. Dist. LEXIS 2598, at *5 (S.D.N.Y. Mar. 6, 1997)

(quoting *Frasca v. Yaw*, 787 F. Supp. 327, 331 (E.D.N.Y. 1992)).   Even if venue is proper in one

district, transfer of venue is not precluded.  *In re Landmark Capital Co.*, 20 B.R. 220, 223

(S.D.N.Y. 1982).

SRM first argues that the forum selection clause in the Policy compels litigating in

SRM's forum of choice, namely, Puerto Rico.  SRM Venue Motion at 31-33.  In fact, a forum-

selection clause may be enforced by a motion to transfer under Section 1404(a).  *Atl. Mar.*

*Constr. Co.*, 571 U.S. at 52.  For a proper application of §1404(a), a forum-selection clause must

be "given controlling weight in all but the most exceptional cases."  *Id.* at 60 (citing *Stewart*

*Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 33 (1988)).  Where parties agree in advance to a forum

that is exclusive to all others, that forum must be accorded the presumption of enforceability.

*Fasano v. Li*, 47 F.4th 91, 101 (2d Cir. 2022) (citing *Aguas Lenders Recovery Group v. Suez,*

*S.A.*, 585 F.3d 696, 700 (2d Cir. 2009)).  Such a presumption can only be rebutted where the

objecting party shows that enforcement "would be unreasonable and unjust, or that the clause

was invalid for such reasons as fraud or overreaching."  *Id.* (citing *M/S Bremen v. Zapata Off-*

*Shore Co.*, 407 U.S. 1, 15 (1972)).[13]

SRM contends that the following Policy language constitutes such a forum selection

clause:

> In the event of the failure of the Insurer to pay an amount claimed to be due hereunder, at
> the direction of the Insured, the Insurer will submit to the jurisdiction of any court of
> competent jurisdiction within the United States and will comply with all requirements
> necessary to give such jurisdiction.  All matters arising hereunder shall be determined in
> accordance with the law and practice of such court.

Policy ¶ 28.  But the Court disagrees.  As a threshold matter, it is unclear that this dispute is

covered by this clause given that the amount claimed to be due was, in fact, already paid; it was

---

[13]    In the face of a valid forum-selection clause, the courts must adjust their §1404(a) analysis in three ways.
*Atl. Mar. Constr. Co.*, 407 U.S. at 63.  The court must (1) accord no weight to the plaintiff's choice of forum, (2)
ignore arguments about the parties' private interests, and (3) "when a party bound by a forum-selection clause flouts
its contractual obligation and files suit in a different forum, a §1404(a) transfer of venue will not carry with it the
original venue's choice-of-law rules."  *Id.* at 63-64.

simply paid to Sears as Insured rather than to SRM. And as a named Insured, Sears has

expressed a clear preference to litigate in this forum. Sears Reply ¶ 17.

In any event, the language on which SRM relies does not actually confer the right to

choose the venue for litigation. In reaching that conclusion, the Court is persuaded by *Columbia*

*Cas. Co. v. Bristol-Myers Squibb Co*., 215 A.D.2d 91 (App. Div. 1st Dept. 1995). The *Columbia*

*Casualty* court found language in the insurance policy there—which is extremely similar to the

language at issue here—to be "permissive" and not to bind the parties to any particular forum,

instead acting as a "service of suit" clause.[14] *Id.* at 96; *see also Orix Credit All., Inc. v. Mid-S.*

*Materials Corp*., 816 F. Supp. 230, 233 (S.D.N.Y. 1993) (distinguishing between a permissive

and mandatory jurisdictional clause and finding that the clause "provides . . . plaintiff with a

guaranteed forum [but] does not deprive him of the right to sue in another having personal

jurisdiction over the defendant.") (citing *ABC Nederland B.V. v. Atrium Inv. Partnership*, 740

F.2d 148, 155 (2d Cir.1984));[15] *Brooke Grp. Ltd. v. JCH Syndicate 488*, 87 N.Y.2d 530, 534–35

(1996) (finding service of suit clauses to be permissive, not mandatory). SRM's reliance on

*Rokeby-Johnson v. Kentucky Agr. Energy Corp.*, 108 A.D.2d 336 (App. Div. 1st Dept. 1985) in

support of its argument that such clauses act as forum selection clauses is unavailing, as *Rokeby-*

*Johnson* was explicitly overruled by the court in *Columbia Casualty. See* 215 A.D.2d at 98–99

---

[14]  The language from the policy at issue in *Columbia Casualty* was as follows: "It is agreed that in the event of the failure of the Underwriters hereon to pay any amount claimed to be due hereunder, the Underwriters hereon, at the request of the Assured, will submit to the jurisdiction of any Court of competent jurisdiction within the United States and will comply with all the requirements necessary to give such Court jurisdiction and all matters arising hereunder shall be determined in accordance with the law and practice of such Court." *Columbia Cas*., 215 A.D.2d at 95.

[15]  The language at issue in *Orix Credit* read as follows: "the undersigned do[es] hereby agree to the venue and jurisdiction of any court in the State and County of New York regarding any matter arising hereunder." *Orix Credit,* 816 F. Supp. at 231.

(reconsidering the holding in *Rokeby-Johnson* and distinguishing the case law on which *Rokeby-Johnson* relied).

SRM attempts to differentiate the language in the Policy from that in *Columbia Casualty*, asserting that the language in the Policy here requires the insurer to submit to a jurisdiction at the "direction" of the insured, while the language in *Columbia Casualty* required submission to a jurisdiction at the "request" of the insured. Venue Motion at 34 (citing *Columbia Cas.*, 215 A.D.2d at 95). But this is a distinction without difference as neither clause binds the parties to any one forum. This conclusion is further supported by a separate provision of the Policy, which clearly sets forth the Insureds' right to commence suit in a forum of its choosing:

> It is agreed that in the event of the failure of the Underwriters hereon to pay any amount claimed to be due hereunder, the Underwriters hereon, at the request of the Insured (or Reinsured), will submit to the jurisdiction of a Court of competent jurisdiction within the United States. Nothing in this Clause constitutes or should be understood to constitute a waiver of Underwriters' rights to commence an action in any Court of competent jurisdiction in the United States, to remove an action to a United States District Court, or to seek a transfer of a case to another Court as permitted by the laws of the United States or of any State in the United States.

Policy at 45. The Underwriters' reservation of the right to commence an action "in any Court of competent jurisdiction" clearly demonstrates that the parties did not intend to be bound to any one forum.

Having found venue to not be determined by the Policy, the Court turns to the nine-factor test under Section 1404. The Court finds that an evaluation of these factors does not support a transfer.

### 1. Locus of Operative Facts

SRM argues that "no substantial part" of the insurance claim at issue took place in New York. SRM Venue Motion at 38, n. 14. SRM also relies on Puerto Rican Insurance law to argue that insurance policies cannot contain provisions depriving Puerto Rican courts of jurisdiction in

29

an action concerning a property located in Puerto Rico. *Id.* at 38-39 (citing 26 L.P.R.A. §

1119(1)(b)). But this position ignores the extensive proceedings that predate the instant motion.

While it is true that the hurricanes occurred in Puerto Rico, a key fact in this case is the

Settlement Agreement between the Underwriters and Sears that was executed during the course

of Sears' bankruptcy proceeding. "In a contract case, the locus of operative facts is determined

by the location where the contract was negotiated or executed, where the contract was to be

performed, and where the alleged breach occurred." *Everlast World's Boxing Headquarters

Corp. v. Ringside, Inc.*, 928 F. Supp. 2d 735, 745 (S.D.N.Y. 2013) (citing *Ivy Soc'y Sports Grp.,

LLC v. Baloncesto Superior Nacional,* 2009 WL 2252116, at *6 (S.D.N.Y. July 28, 2009)).

Further, SRM has been litigating in this Court for a number of years. For all the reasons

explained above, the bankruptcy proceedings are central to any determination in the instant

action. *See, e.g.*, SRM Adversary, Lift Stay Order. Indeed, SRM's claim will impact the assets

of the liquidating trust and the distribution of estate assets. *Id.* ("In the context of § 1404(a)

venue analysis, a court may determine that there are several loci of operative facts.") (internal

citations and quotations omitted). In light of the fact that these key events took place in this

jurisdiction, the Court finds that this factor weighs against transferring the case to Puerto Rico, or

at best, is a neutral factor.

> 2. Convenience Factors, Location of Documents and Witnesses, and Means
>    of Parties

In determining whether a transfer of venue is warranted, courts also look to factors that

include the convenience of witnesses and parties, the relative means of the parties, the ability to

compel witnesses, and the location of relevant documents and relative ease of access to sources

of proof. *Pence v. Gee Grp., Inc.*, 236 F. Supp. 3d 843, 850 (S.D.N.Y. 2017). "When assessing

the convenience of witnesses, a court must do more than merely compare the number of

witnesses who reside in the current forum to the number located in the proposed transferee

forum, but should instead assess the materiality, nature and quality of the testimony that the

witnesses are likely to provide." *Capital Recs¸* 611 F. Supp. 2d at 366 (quoting *Herbert*, 325 F.

Supp.2d at 286). "When a party seeks the transfer on account of the convenience of witnesses

under [Section] 1404(a), he must clearly specify the key witnesses to be called and must make a

general statement of what their testimony will cover." *Factors Etc., Inc. v. Pro Arts, Inc.*, 579

F.2d 215, 218–19 (2d Cir. 1978), *abrogated on other grounds by Pirone v. MacMillan, Inc.*, 894

F.2d 579 (2d Cir. 1990) (internal citations omitted).

SRM asserts that "practically all of the witnesses are located in Puerto Rico," including

SRM's officials, its appraisers, and general contractors engaged to repair the damaged premises.

SRM Venue Motion at 39. But before SRM can litigate the extent of the damages to its property,

the Court must first determine whether SRM has an independent claim against Plaintiffs, which

is solely a matter of contractual interpretation. Thus, it is unclear what impact SRM's witnesses

would have on this proceeding, which primarily seeks to clarify the parties' rights and

obligations under the Policy and where SRM seeks insurance proceeds that have already been

paid. Similarly, with regard to a court's ability to compel the presence of witnesses, this factor

is, at best neutral; SRM itself acknowledges that the ability to compel attendance of witnesses is

the same in this Court and in Puerto Rico. Venue Motion at 40.

Moreover, the documents most relevant to this case, including the Policy and the

Settlement Agreement, have already been produced and are part of the record of these

bankruptcy cases. *See* Compl., Ex. A, B. And while documents "created to deal with the

property damage" suffered by SRM include contracts, invoices and documents related to

reconstruction work that are located in Puerto Rico, Venue Motion at 39, it is not clear what

import these documents are likely to have given that the central dispute is one of contract interpretation.

While the Court acknowledges that SRM has no contacts or presence in New York, *see* Venue Motion at 39, SRM has chosen to actively participate in this bankruptcy, including by commencing the SRM Adversary and filing numerous earlier motions relating to the insurance proceeds under the Policy. Further, the availability of electronic communication and virtual court appearances minimizes any inconvenience to the parties. With respect to the relative means of the parties, SRM has not made any allegations that SRM lacks the resources to litigate in this forum; to the contrary, SRM's extensive involvement in Sears' bankruptcy demonstrates that SRM possesses the means to litigate here. Ultimately, then, the Court affords little weight to this factor.

### 3.   Governing Law

In determining whether a motion to transfer venue should be granted, courts consider the forum's familiarity with the governing law. *Everlast,* 928 F. Supp. 2d. at 743. However, "[i]n general, this factor is 'one of the least important factors in determining a motion to transfer, especially where no complex questions of foreign law are involved.'" *Id.* at 747 (quoting *ACE Am. Ins. Co. v. Bank of the Ozarks,* 2012 WL 3240239, at *13 (S.D.N.Y. Aug. 3, 2012)).

Sears argues that federal bankruptcy law governs "many" of the issues in this action while SRM asserts that Puerto Rican law will apply. Sears Reply ¶ 21; SRM Venue Motion at 40. The Policy states that choice of law is to be determined by the same court that decides choice of jurisdiction "as stated in the Service of Suit Clause in Supplemental Clauses." *See* Policy. However, the Court need not resolve the choice of law question now given the minimal

weight afforded to this factor and the fact that both this Court and the District Court of Puerto Rico are both fully capable of adjudicating contract disputes.

### 4.    Judicial Economy

Another factor courts consider in determining appropriate venue is "trial efficiency and the interests of justice." *Everlast*, 928 F. Supp. 2d at 743.   The Court finds that this factor weighs strongly against transfer.   Given the extensive procedural history in this Court involving SRM and the Debtors as to the Policy and Settlement Agreement, it would be extremely inefficient for another Court to begin anew.

### 5.    Plaintiff's Choice of Forum and the First Filed Rule

Generally, courts give significant deference to a plaintiff's choice of forum.  *Iragorri v. United Techs. Corp.*, 274 F.3d 65, 70 (2d Cir. 2001).   "[U]nless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed."  *Id.* (quoting *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508 (1947)).   A corollary of the deference given to a plaintiff's choice of forum arises when two substantially similar lawsuits are filed.   In that situation, the "first-filed rule" states that "[w]here there are two competing lawsuits, the first suit should have priority."  *New York Marine & Gen. Ins. Co. v. Lafarge N. Am., Inc.*, 599 F.3d 102, 112 (2d Cir. 2010) (quoting *D.H. Blair & Co., Inc. v. Gottdiener*, 462 F.3d 95, 106 (2d Cir. 2006)).   There is a strong presumption in favor of the forum where the case is first filed.   *See 800-Flowers, Inc. v. Intercontinental Florist, Inc.*, 860 F.Supp. 128, 131 (S.D.N.Y. 1994).   The rule was developed to "serve [] the purposes of promoting efficiency [] and should not be disregarded lightly."  *Id.* at 132 (quoting *Alltrade, Inc. v. Uniweld Prods., Inc.*, 946 F.2d 622, 625 (9th Cir. 1991)).

The Second Circuit has identified two exceptions to the first-filed rule: "(1) where the balance of convenience favors the second-filed action, and (2) where special circumstances warrant giving priority to the second suit." *United States SEC v. Alpine Secs. Corp.*, 2018 U.S. Dist. LEXIS 115531 at *7 (S.D.N.Y. 2018) (quoting *Emp'rs Ins. Of Wausau v. Fox Entm't Grp.*, 522 F.3d 271, 275 (2d Cir. 2008)). The analysis of the first exception is "essentially the same as th[e] [analysis] considered in connection with motions to transfer venue pursuant to 28 U.S.C. § 1404(a)." *Berkely Assurance Co. v. MacDonald-Miller Facility Sols., Inc.*, 2019 WL 6841419 at *4 (S.D.N.Y. Dec. 16, 2019) (quoting *Emp'rs. Ins. Of Wasau*, 522 F.3d at 275). When considering the balance of convenience exception, the court has considered the ties between the litigation and the forum of the first-filed action. *Emps. Ins. Of Wausau*, 522 F.3d at 275. The second exception for "special circumstances" may apply where "forum shopping *alone* motivated the choice of the situs for the first suit." *Berkely Assurance* 2019 WL 6841419 at *4 (*quoting Emps. Ins. of Wausau*, 522 F.3d at 275) (emphasis in original). The party seeking to transfer venue bears the burden of showing any special circumstances. *800-Flowers*, 860 F. Supp. at 132. "Special circumstances include manipulative or deceptive behavior on the part of the first-filing" party. *Lafarge N. Am..*, 599 F.3d at 112. One example is where the first-filed lawsuit is an "improper anticipatory declaratory judgment action." *Berkely Assurance* 2019 WL 6841419 at *6. Special circumstances sufficient to overcome the first filed rule may exist where "forum shopping alone motivated the choice of the suits for the first suit." *800-Flowers, Inc.*, 860 F.Supp. at 132 (quoting *William Gluckin & Co. v. Int'l Playtex Corp.*, 407 F.2d 177, 178 (2d Cir. 1969)).

SRM urges the Court to disregard Plaintiffs' choice of forum here, arguing that Plaintiff's filing "was based on 'manipulative and deceptive behavior'" such that Plaintiffs should not

benefit from deference to its choice of forum or the presumption afforded by the first-filed rule.

Venue Motion at 35-36. SRM asserts that because the instant action was filed in direct

anticipation of SRM's action that the Court should find that the "special circumstance" exception

to the first filed rule applies. *Id.* at 35. Again, the Court disagrees. Even assuming that

Plaintiffs made the choice to file the instant action rather than allow SRM to file the Puerto Rico

Action, the Court declines to consider this action deceitful in light of the fact that this Court has

already dealt extensively with the issues raised in this action and the fact that this suit involves

not only SRM but also directly impacts the liquidating trust of these Debtors. Accordingly, the

Court finds that the Plaintiff's choice of forum weighs against a transfer of venue.[16]

## <u>Conclusion</u>

For the reasons set forth above, Plaintiffs' motion for a preliminary injunction is granted

and SRM's cross-motion to change venue is denied. Counsel to the Plaintiffs should settle an

order on five days' notice. The proposed order must be submitted by filing a notice of the

proposed order on the Case Management/Electronic Case Filing docket, with a copy of the

proposed order attached as an exhibit to the notice. A copy of the notice and proposed order

shall also be served upon opposing counsel. The parties should also contact chambers to set a

status conference in this matter for approximately thirty days from the date of this Memorandum

of Decision.

Dated: White Plains, New York
        April 3, 2024

                                        _____*/s/ Sean H. Lane*_____
                                        UNITED STATES BANKRUPTCY JUDGE

---

[16]     In one sense, neither Plaintiffs nor SRM are really responsible for the choice of forum. Consistent with the phenomenon of bankruptcy serving as a centralized forum for resolving disputes affecting the *res* of a debtor's bankruptcy estate, the Sears bankruptcy resulted in the validity of the Settlement Agreement being litigated in this forum.